1

2          UNITED STATES DISTRICT COURT

3          NORTHERN DISTRICT OF CALIFORNIA

4

5

6   SUPERIOR ENERGY SERVICES, LLC,

7          Petitioner,                        No. C 13-2056 PJH

8   v.                                        **ORDER DENYING FIRST AMENDED
                                              PETITION TO COMPEL**
9   CABINDA GULF OIL COMPANY LTD.,            **ARBITRATION**

10         Respondent.
    _____/
11

12         This matter came on for hearing on December 4, 2013.  Petitioner Superior Energy

13  Services, LLC and respondent Cabinda Gulf Oil Company Limited appeared by counsel.

14  Having read the parties' papers and carefully considered their arguments and the relevant

15  legal authority, the court hereby DENIES the first amended petition to compel arbitration.

16                              **BACKGROUND**

17         According to the allegations of the first amended petition for an order compelling

18  arbitration ("Am. Pet."), filed by petitioner Superior Energy Services, LLC ("Superior

19  Energy" or "SES"), respondent Cabinda Gulf Oil Company Limited ("CABGOC") conducts

20  oil and gas exploration and development operations off the coast of Angola.  Prior to May

21  2009, CABGOC contacted Superior Energy about providing CABGOC with ships, scuba

22  diving and other equipment and personnel to support its oil and gas operations.  In order to

23  comply with Angolan law, Superior Energy associated with an Angolan company, Operatec

24  Maquinas e Representacoes Limitada ("Operatec"), and arranged for Operatec to contract

25  with CABGOC to provide the necessary services, and then enter a subcontract with

26  Superior Energy to perform the actual work.  Am. Pet. ¶ 5.

27

28

**United States District Court**
For the Northern District of California

**A.     The Main Contract**

On May 1, 2009, Operatec entered a contract with CABGOC for Operatec (as

"CONTRACTOR") to provide scuba diving services, ships, personnel and equipment to

CABGOC (as "COMPANY") for its oil and gas operations off the coast of Angola.  Am. Pet.

¶ 6 and Ex. A (the "Main Contract").  The Main Contract states that its terms shall apply to

any subcontractor's Work:

> **13.     BUSINESS RELATIONSHIP OF THE PARTIES**
>
> This is a Contract for Services and shall not be construed as a charter or lease of CONTRACTOR's equipment.  All of CONTRACTOR's Operations are those of an independent contractor, and CONTRACTOR, its employees, agents and representatives are not employees or agents of COMPANY.  As an independent contractor, CONTRACTOR assumes all legal and contractual obligations arising out the performance of the Work, no matter to whom such obligations may be owing, whether to the Country or any political subdivision thereof, to CONTRACTOR's own personnel or to third persons.  Use of subcontractors by CONTRACTOR shall not relieve CONTRACTOR from any liability or obligation under this Contract.  The terms of this Contract regarding CONTRACTOR's Work to be performed, its equipment and personnel shall likewise apply to any subcontractor's Work to be performed, its property and personnel as if such Work, property and personnel were the Work, property and personnel of CONTRACTOR.  COMPANY may instruct and direct CONTRACTOR as to the results to be obtained from CONTRACTOR's employees.  CONTRACTOR, as an independent contractor, however, shall have complete control, supervision and direction over its equipment and personnel and over the manner and method of all its Operations.

Main Contract, Art. 13.  The Main Contract between CABGOC and Operatec also includes

an arbitration provision:

> **18.     APPLICABLE LAW AND SETTLEMENT OF DISPUTES**
>
> This Contract, including this Article 18, shall be governed, construed, interpreted, enforced and the relationship of the parties determined in accordance with the laws of California, U.S.A., without regard to its choice of law rules.
> 18.1    Any dispute, controversy or claim arising out of, in relation to, or in connection with this Contract or the operation/activities carried out under this Contract, including without limitation any dispute as to the existence, construction, validity, interpretation, enforceability or breach of this Contract (hereafter "Dispute") shall be exclusively and finally settled as set forth hereafter.

Main Contract, Art. 18.  The Main Contract also contains a non-assignment provision:

United States District Court
For the Northern District of California

**16.   ASSIGNMENT**

. . .

16.2   CONTRACTOR [Operatec] may not assign any of its rights or obligations under this Contract without the prior written consent of COMPANY.  Any government approvals required therefor shall be the sole responsibility of CONTRACTOR.

Main Contract, Art. 16.

**B.   The Subcontract**

Also on May 1, 2009, Operatec entered into a subcontract agreement with Superior Energy, whereby Superior Energy (as Subcontractor) agreed to perform the services as defined in the Main Contract, on behalf of Operatec (as Contractor) upon the terms and conditions set forth in the subcontract.  Am. Pet. ¶ 9 and Ex. B (the "Subcontract").  The Subcontract provides as follows:

**WHEREAS,** Contractor entered into [the Main Contract] dated 1 May 2009 between it, as the main contractor, and Cabinda Gulf Oil Company Limited ("*Company*"); and

**WHEREAS,** the Main Contract pertains to the supply of diving services for the performance of certain services associated with Company's offshore exploration or production activities all as more fully described in the Main Contract; and

**WHEREAS,** Subcontractor has agreed to perform the Services (defined below) on behalf of Contractor upon the terms and conditions herein set forth; . . .

**1.   *The Services***

1.1   The Subcontractor shall perform the "*Services*" as defined in, and to be performed by Contractor under, the Main Contract (the "Services"). . . .

1.2   Subcontractor agrees to be bound by all the terms and conditions of the Subcontract and the Main Contract as it relates to the Services and assumes all of the obligations of Contractor to Company as set forth in those terms of the Main Contract in relation to the performance of the Services.  Likewise, Contractor agrees to extend to Subcontractor all rights and benefits under the Main Contract which are extended to Subcontractor by Company in relation to the performance of the Services. The Main Contract is attached hereto in Appendix A and made a part hereof.

1.3   This Subcontract and the Main Contract are intended to supplement and complement each other and shall, where possible, be

3

United States District Court

For the Northern District of California

1
2
3

> thusly interpreted.  If, however, any provision of this Subcontract conflicts with any provision of the Main Contract, the terms of the Subcontract shall govern the relationship between Contractor and Subcontractor.  The Services shall be governed by the Main Contract.

4   Subcontract at 1.  Superior Energy directly provided the Work and Services to CABGOC,

5   and CABGOC worked with Superior Energy personnel on a daily basis in connection with

6   CABGOC's offshore oil and gas exploration and development activities.  Am. Pet. ¶ 10.

7   **C.     Amendment No. 2 to Main Contract**

8          On March 20, 2011, CABGOC and Operatec entered into Amendment No. 2 to the

9   Main Contract, providing for the work performed by the subsea operations vessel (SOV)

10  Ullswater in making certain subsea repairs and related support services.  Am. Pet., Ex. F

11  ("Amendment No. 2").  The Ullswater is owned by a subsidiary of Superior Energy, Hallin

12  Marine, LLC.  Am. Pet. ¶ 11, n.1.  From about April to July 2011, Superior Energy provided

13  the Ullswater and the equipment and personnel to support the Ullswater subsea repair

14  activities as described in Amendment No. 2.  Am. Pet. ¶ 11.

15  **D.     Nonpayment Dispute**

16         Superior Energy alleges that it issued a number invoices through Operatec to

17  CABGOC for the use of the Ullswater and related equipment and personnel.  CABGOC

18  agreed to pay some, but not all, of the invoices.  Superior Energy then reissued the

19  charges as two separate invoices to separate the undisputed charges from the disputed

20  charges which totaled $2,028,574 (the "Ullswater Disputed Invoice").  Am. Pet. ¶ 12.

21  **E.     Superior Energy's Settlement with Operatec**

22         Superior Energy and Operatec mediated their disputes arising out of the Subcontract

23  and entered a settlement agreement on January 15, 2013, whereby Superior Energy

24  released Operatec from all claims associated with the Ullswater Disputed Invoice and

25  reserved its rights as against CABGOC for payment of the Ullswater Disputed Invoice:

26
27
28

> ***The Ullswater Claims.*** SES [Superior Energy Services, LLC] agrees to release Operatec and Ray from and against all claims, disputes and liabilities arising out of, relating to or in connection with those claims associated with SES invoices submitted to CABGOC in connection with the Ullswater Disputed Invoices; however, Operatec

1   acknowledges that SES reserves its rights as against CABGOC for
2   payment of the Ullswater Disputed Invoices.  The scope of this release
    shall not inure to the benefit of CABGOC, and SES reserves all rights
3   to pursue payment from CABGOC and any other appropriate party not
    released hereby. . . .

4   Am. Pet., Ex. G at 3 (the "Settlement Agreement").

5         The parties entered a supplement to the settlement agreement on May 24, 2013,

6   which included a provision that "the Settlement Agreement provides that SES, and not

7   Operatec, has the right to pursue any and all claims for recovery of any allegedly unpaid

8   sums for the Work or Services supplied by SES, as reflected in the Ullswater Disputed

9   Invoices."  Am. Pet., Ex. G ¶ 2  (the "Supplement to Settlement").  The Supplement to

10  Settlement further provides that the settlement agreement was not intended to constitute

11  an assignment in violation of nonassignment provision of Article 16.2 of the Main Contract.

12  Am. Pet., Ex. G ¶ 6.

13  **F.    Demand for Arbitration**

14        By letter dated March 6, 2013, Superior Energy suggested that CABGOC mediate

15  the payment for services covered by the Ullswater Disputed Invoice, and if mediation was

16  unsuccessful, to arbitrate the dispute.  Am. Pet., Ex. C.  CABGOC refused to mediate and

17  indicated that it would reject any notice of arbitration.  Am. Pet., Ex. D.

18        On April 26, 2013, Superior Energy filed a demand for arbitration before the

19  American Arbitration Association for nonpayment and breach of the Main Contract and

20  Amendment No. 2.  Am. Pet., Ex. E.

21        On June 7, 2013, Superior Energy filed the instant petition for an order to compel

22  arbitration.  Superior Energy and CABGOC have agreed to stay the arbitration pending the

23  court's ruling on the petition.  Am. Pet. at 7 n.2.  Pursuant to the stipulations of the parties,

24  the court issued briefing schedules on the first amended petition, and the operative petition

25  is fully briefed.  In support of its reply, Superior Energy submitted declarations attesting to

26  the factual allegations made in the first amended petition.  The court declines to consider

27  these declarations on the ground that they were improperly raised in reply, even after

28  CABGOC stipulated to the filing of an amended petition, affording CABGOC no opportunity

United States District Court
For the Northern District of California

5

1   to respond to the statements made therein.  The evidentiary objections raised by CABGOC

2   are overruled as moot.

3                                                   **LEGAL STANDARD**

4            Section 2 of the Federal Arbitration Act (FAA) provides that a written arbitration

5   agreement in "a contract evidencing a transaction involving commerce . . . shall be valid,

6   irrevocable, and enforceable."  9 U.S.C. § 2.  Any party bound to an arbitration agreement

7   that falls within the scope of the FAA may bring a motion in federal district court to compel

8   arbitration and dismiss or stay the proceedings.  9 U.S.C. §§ 3, 4.  The FAA eliminates

9   district court discretion and requires the court to compel arbitration of issues covered by the

10  arbitration agreement.  *Dean Witter Reynolds, Inc., v. Byrd*, 470 U.S. 213, 218 (1985).  The

11  role of the federal courts in these circumstances is limited to determining whether the

12  arbitration clause at issue is valid and enforceable under § 2 of the FAA.  *Chiron Corp. v.*

13  *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  That is, the court must

14  determine whether there is an agreement between the parties to arbitrate; the claims at

15  issue fall within the scope of the agreement; and the agreement is valid and enforceable.

16  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

17           An arbitration agreement governed by the FAA is presumed to be valid and

18  enforceable.  *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226–227 (1987).

19  The party resisting arbitration bears the burden of showing that the arbitration agreement is

20  invalid or does not encompass the claims at issue.  *See Green Tree Fin. Corp.-Ala. v.*

21  *Randolph,* 531 U.S. 79, 92 (2000).  Because of the strong federal policy favoring

22  arbitration, doubts or ambiguities must be resolved in favor of and not against arbitration.

23  *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1745 (2011) (citing *Moses H. Cone*

24  *Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)).

25           The right to compel arbitration stems from a contractual right, and that contractual

26  right may not be invoked by one who is not a party to the agreement and does not

27  otherwise possess the right to compel arbitration.  *Britton v. Co-op Banking Grp.*, 4 F.3d

28  742, 744 (9th Cir. 1993) (citing *Lorber Industries of California v. Los Angeles Printworks*

United States District Court

For the Northern District of California

1   *Corp.*, 803 F.2d 523, 525 (9th Cir. 1986)).  An entity that is neither a party to nor agent for
2   nor beneficiary of the contract lacks standing to compel arbitration.  *Id.* (citing *E.E.O.C. v.*
3   *Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543, n. 2 (9th Cir. 1987)).  Nonsignatories of
4   arbitration agreements may be bound by the agreement under ordinary contract and
5   agency principles.  *Britton*, 4 F.3d at 745 (citing *Letizia v. Prudential Bache Securities, Inc.*,
6   802 F.2d 1185, 1187 (9th Cir. 1986)).

7                                      **DISCUSSION**
8   **A.      The Written Agreements Do Not Assign Operatec's Rights to Superior Energy.**
9           This dispute involves two separate contracts for providing subsea operations vessel
10  and other services in support of CABGOC's offshore oil exploration and development
11  efforts in Angola:
12                  (1) the Main Contract between CABGOC and Operatec; and
13                  (2) the Subcontract between Operatec and Superior Energy.
14  It is undisputed that under Article 18 of the Main Contract, CABGOC agreed to arbitrate
15  any disputes arising out of the contract with Operatec.  It is further undisputed that Superior
16  Energy was not a party to the Main Contract.  The contractual issues in dispute are
17  whether CABGOC and Operatec expressly assigned the rights and benefits under the Main
18  Contract to Superior Energy pursuant to Section 13 of the Main Contract and Sections 1.2
19  and 1.3 of the Subcontract, and whether Operatec assigned to Superior its causes of action
20  against CABGOC to pursue payment for services billed in the Ullswater Disputed Invoice.

21          **1.      Legal Standard**
22          "'The burden of proving an assignment falls upon the party asserting rights
23  thereunder.'"  *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 988-89 (2013)
24  (quoting *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 292 (1954)), *rev. denied* July
25  31, 2013.  "An assignment agreement 'must describe the subject matter of the assignment
26  with sufficient particularity to identify the rights assigned.'"  *Id.* (quoting *Mission Valley East,*
27  *Inc. v. County of Kern,* 120 Cal. App. 3d 89, 97 (1981)).  "As with contracts generally, the
28  nature of an assignment is determined by ascertaining the intent of the parties."  *Id.*

                                            7

United States District Court
For the Northern District of California

1    In determining whether an assignment has been made, the intention of the parties

2  as manifested in the instrument is controlling.  *California Ins. Guarantee Assn. v. Workers'*

3  *Comp. Appeals Bd.*, 203 Cal. App. 4th 1328, 1335 (2012) (citations and internal quotation

4  marks omitted).  "'An assignment of a right is a manifestation of the assignor's intention to

5  transfer it by virtue of which the assignor's right to performance by the obligor is

6  extinguished in whole or in part and the assignee acquires a right to such performance.'"

7  *Id.* at 1337 (quoting Rest. 2d Contracts (1981) § 317(1)).

8       **2.    Main Contract**

9       Superior Energy contends that CABGOC and Operatec assigned the rights and

10  responsibilities under the Main Contract to Superior Energy, citing Article 13 of the Main

11  Contract which provides that its terms "regarding [Operatec's] Work to be performed, its

12  equipment and personnel shall likewise apply to any subcontractor's work to be performed,

13  its property and personnel as if such Work, property and personnel were the Work,

14  property and personnel of [Operatec]."

15      The provision of the Main Contract cited by Superior Energy does not evidence an

16  intent to transfer Operatec's rights to Superior Energy.  Article 13 requires that the terms of

17  the Main Contract regarding Operatec's work to be performed under the contract must also

18  apply to any subcontractor's work, thereby requiring the scope of work performed by a

19  subcontractor to be consistent with the scope of work defined in the Main Contract.

20  Superior Energy contends that this provision amounts to express assignment of the rights

21  and obligations under the Main Contract to Superior Energy, but cites no provision in the

22  Main Contract where Operatec purports to assign its rights to Superior Energy, so as to

23  extinguish its own right to performance and its obligations under the contract.  As Article 13

24  states, "Use of subcontractors by [Operatec] shall not relieve [Operatec] from any liability or

25  obligation under the Contract."

26      **3.    Subcontract**

27      Superior Energy contends that the Subcontract contains an express assignment by

28  Operatec of its rights under the Main Contract to Superior Energy.  Mot. at 11.  Section 1.2

United States District Court
For the Northern District of California

of the Subcontract provides that Superior Energy "assumes all of the obligations of
Contractor [Operatec] to Company [Superior Energy] as set forth in those terms of the Main
Contract in relation to the performance of the Services."  Section 1.2 further provides,
"Likewise, Contractor agrees to extend to Subcontractor all rights and benefits under the
Main Contract which are extended to Subcontractor by Company in relation to the
performance of the Services."  Sections 1.2 and 1.3 express the parties' agreement that
Superior Energy would perform the services to be performed by Operatec under the Main
Contract, as reflected in Section 1.1 ("Subcontractor shall perform the "*Services*" as defined
in, and to be performed by Contractor under, the Main Contract"), and that Superior Energy
would be bound by the scope of work defined by the Main Contract "in relation to the
performance of the Services."  Although these particular terms contain language, standing
alone, that would support Superior Energy's argument that Operatec assigned its rights and
obligations under the Main Contract to Superior Energy, when taken in the context of the
entire agreement, these provisions of the Subcontract do not effect an assignment of the
Main Contract by Operatec to Superior Energy.  *See City of Atascadero v. Merrill Lynch,
Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998) ("Any contract must be
construed as a whole, with the various individual provisions interpreted together so as to
give effect to all, if reasonably possible or practicable.") (citing Cal. Civ. Code § 1641; Cal.
Code Civ. Proc. § 1858; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts § 686 at
619-20.)

    a.    **Payment Under Main Contract Remained Payable to Operatec, Not
Superior Energy**

Section 2 of the Subcontract, which governs Operatec's obligation to pay Superior
Energy for full performance of the services defined in the Main Contract, does not indicate
that Superior Energy was assigned Operatec's right to payment under the Main Contract.
Rather, the Subcontract recognized that the amounts due under the Main Contract
remained payable to Operatec:  "Contractor [Operatec] shall pay Subcontract [Superior

United States District Court

For the Northern District of California

1  Energy] all amounts **due and payable to Contractor** under the Main Contract."

2  Subcontract § 2 (emphasis added).

3       Accordingly, Section 3 of the Subcontract provides that CABGOC's payments under

4  the Main Contract would be deposited into an Angolan bank account held by Operatec, and

5  that Operatec would transfer the Main Contract payments to an offshore account

6  established by Superior Energy.  These provisions governing payment obligations and

7  procedures show that Operatec did not assign to Superior Energy the right to payment from

8  CABGOC under the Main Contract, but show that the parties intended that Superior Energy

9  would receive payment from Operatec under the terms set forth in the Subcontract.

10            **b.**     **Consent to Assignment Provision of Subcontract**

11       Section 4.4 of the Subcontract expressly prohibits Operatec from assigning its rights

12  and obligations under the Main Contract without Superior Energy's consent.  This provision

13  is inconsistent with an assignment by Operatec of all its rights under the Main Contract to

14  Superior Energy.  That is, the following consent-to-assignment provision in the Subcontract

15  would not be necessary if the rights under the Main Contract had been assigned to

16  Superior Energy:

17            4.4     Contractor shall not assign, transfer, encumber, pledge or otherwise
    dispose of the Main Contract, in whole or in part, or any of its rights and
18            obligations thereunder without the prior written consent of Subcontractor.

19  Read in the context of this consent-to-assignment provision, Sections 1.2 and 1.3 do not

20  demonstrate an intent to assign or transfer Operatec's rights under the Main Contract to

21  Superior Energy.  *See City of Atascadero*, 68 Cal. App. 4th at 473 ("Courts must interpret

22  contractual language in a manner which gives force and effect to every provision, and not

23  in a way which renders some clauses nugatory, inoperative or meaningless.") (citations

24  omitted).

25       CABGOC refers to section 1.2 as a "pass-through" provision, Opp. at 11, and neither

26  party addresses or disputes the issue whether the Subcontract included a pass-through

27  agreement.  *See Sehulster Tunnels/Pre-Con v. Traylor Bros., Inc./Obayashi Corp.*, 111 Cal.

28  App. 4th 1328, 1348-49 (2003) (when an owner's breach of a construction contract with a

United States District Court

For the Northern District of California

1   general contractor results in damage to a subcontractor who lacks standing to assert a

2   claim directly against the owner, "a general contractor is permitted to present a

3   pass-through claim on behalf of the subcontractor against the [owner]")  (citations omitted).

4   There is no indication in the record, however, that Operatec has filed a pass-through claim

5   against CABGOC on behalf of Superior Energy under California law, and under the

6   contractual relationships of the parties, Superior Energy lacks standing to make a demand

7   for arbitration directly against CABGOC.

8          **4.      Settlement Agreement and Supplement**

9          Superior Energy also contends that pursuant to the Settlement Agreement resolving

10  the disputes arising out of the Subcontract, Operatec assigned to Superior Energy its

11  "exclusive right to pursue any claims against CABGOC for non-payment of $2,028,574, as

12  reflected in the Ullswater Disputed Invoices."  Reply at 6.  CABGOC counters that the

13  language of the Settlement Agreement and the Supplement to Settlement does not

14  effectively assign Operatec's causes of action to Superior Energy.

15          **a.      Settlement Agreement Does Not Assign Operatec's Claims**

16                   **Against CABGOC**

17          Superior Energy relies on the following provision of its Settlement Agreement with

18  Operatec to demonstrate that Operatec assigned its causes of action under the Main

19  Contract to Superior Energy:

20

21          ***The Ullswater Claims.***  SES [Superior Energy Services, LLC] agrees
            to **release Operatec** and Ray from and against all claims, disputes
22          and liabilities arising out of, relating to or in connection with those
            claims associated with SES invoices submitted to CABGOC in
23          connection with the Ullswater Disputed Invoices; however, Operatec
            acknowledges that **SES reserves its rights as against CABGOC for**
24          **payment of the Ullswater Disputed Invoices**.  The scope of this
            release shall not inure to the benefit of CABGOC, and **SES reserves**
25          **all rights to pursue payment from CABGOC** and any other
            appropriate party not released hereby.  Operatec acknowledges and
26          affirms that it has not intended by any act or communication to
            acquiesce in or agree to CABGOC's non-payment of the Ullswater
27          Disputed Invoices and that Operatec has not released or agreed to
            waive payment by CABGOC of the Ullswater Disputed Invoices.
28          Operatec acknowledges that it is neutral as to the merits or lack

United States District Court

For the Northern District of California

1   thereof of the Ullswater Disputed Invoices.  If SES proceeds at its own
2   time and expense to seek payment through either negotiation or the
    filing of a claim, Operatec relinquishes any right it may have to collect
3   its associated 9% management fees that would otherwise routinely be
    retained by Operatec.  In the event SES succeeds in obtaining further
4   payment of the Ullswater Disputed Invoices, and if such payment must
    be made through the Operatec account, then Operatec will cooperate
5   and progress the payment of such further payments to Superior,
    consistent with Operatec's procedures under this Agreement and the
6   Subcontract.  As to the Ullswater Disputed Invoices, the release
    provided hereby to Operatec and Ray by this Agreement is absolute
7   and effective regardless of whether or not SES receives payment of
    such invoices.

8   Settlement Agreement § 2.1(iv) (emphasis added).  Though Superior Energy contends that

9   Operatec assigned to Superior Energy the right to pursue causes of action against

10  CABGOC to recover money damages for breach of the Main Contract, the language of the

11  Settlement Agreement does not express any intent by Operatec to assign its claims against

12  CABGOC.

13      This provision of the Settlement Agreement (1) "releases" Operatec from liability

14  related to the Ullswater Disputed Invoices and (2) "reserves" Superior Energy's rights to

15  collect against CABGOC, but contains no language assigning Operatec's claims against

16  CABGOC to Superior Energy.  The Settlement Agreement provides that Superior Energy

17  "reserves all rights to pursue payment from CABGOC," but there is no assignment of

18  Operatec's right to pursue payment from CABGOC.  This provision only serves to reserve

19  whatever rights that Superior Energy had in pursuing payment from CABGOC on the

20  Ullwater Disputed Invoices.  The language of the Settlement Agreement does not purport to

21  transfer Operatec's right to seek money due under the Main Contract to Superior Energy.

22  It is entirely plausible, and consistent with the language of the Settlement Agreement, that

23  Operatec and Superior Energy intended to effect such an assignment, particularly in light of

24  Superior Energy's release of claims against Operatec.  But if this was the parties' intention,

25  it was not manifested in the written instrument.  Applying general principles of contract

26  interpretation under California law, this provision of the Settlement Agreement is insufficient

27  to create an assignment of the right to payment.  "While no particular form of assignment is

28  required, it is essential to the assignment of a right that the assignor manifests an intention

12

United States District Court

For the Northern District of California

1    to transfer 'the right.'" *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 990

2    (2013) (citing *Sunburst Bank v. Executive Life Ins. Co.*, 24 Cal. App. 4th 1156, 1164

3    (1994)), *rev. denied* Jul. 31, 2013.

4                    **b.      Supplement to Settlement Agreement Does Not Assign**

5                              **Operatec's Claim Against CABGOC for Unpaid Sums**

6           Superior Energy also relies on the Supplement to the Settlement Agreement as

7    evidence of the assignment to Superior Energy of Operatec's right to recover against

8    CABGOC:  "Sec. II(2.1)(iv) of the Settlement Agreement provides that SES [Superior

9    Energy Services, LLC], and not Operatec, has the right to pursue any and all claims for

10   recovery of any allegedly unpaid sums for the Work or Services supplied by [Superior

11   Energy], as reflected in the Ullswater Disputed Invoices."  Even if this statement were

12   intended to clarify the parties' understanding that Operatec assigned its right to recover

13   against CABGOC to Superior Energy, it is unclear whether Operatec relinquished its right

14   to recover damages to Superior Energy, such that Superior Energy would "step into the

15   shoes" of Operatec for purposes of recovering the unpaid money owed under the Main

16   Contract.  Mot. at 12 (citing *In re Boyajian*, 564 F.3d 1088, 1091 (9th Cir. 2009)

17   (recognizing that "under general principles of assignment law an assignee steps into the

18   shoes of the assignor")).  At most, this statement indicates the parties' understanding that

19   Superior Energy would pursue a claim against CABGOC for the disputed invoices, but not

20   that Operatec transferred, assigned or relinquished its right to pursue the same claim

21   against CABGOC.  The Supplement to the Settlement Agreement does not sufficiently

22   manifest an intent to assign Operatec's right.  *See Mission Valley E., Inc. v. Cnty. of Kern*,

23   120 Cal. App. 3d 89, 96-97 (1981) ("Although the general rule in California is that choses in

24   action or other personal rights to claim money are freely assignable, nonetheless, proof of

25   the intent to assign must be 'clear and positive' to protect the obligor . . . from any further

26   claim by the primary obligee") (quoting *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284,

27   292 (1954)).

28

United States District Court

For the Northern District of California

1   Because the Settlement Agreement and Supplement do not sufficiently manifest

2   Operatec's intent to assign to Superior Energy the right to claim money due or recover

3   money damages under the Ullswater Disputed Invoice, Superior Energy does not have

4   standing to compel arbitration to pursue that claim.  To allow Superior Energy to proceed in

5   the absence of an effective assignment of that right would create the potential risk that

6   CABGOC would face claims from both Superior Energy and CABGOC.  *See Henkel Corp.*

7   *v. Hartford Accident & Indem. Co.*, 29 Cal. 4th 934, 945 (2003) ("If both assignor and

8   assignee were to claim the right to defense, the insurer might effectively be forced to

9   undertake the burden of defending both parties.").

10   Despite the strong federal policy in favor of arbitration, Superior Energy has not met

11   its burden to prove an assignment of the right to recover damages under the Main Contract

12   which contained the arbitration provision.  If Superior Energy had obtained a clearly worded

13   assignment from Operatec of its right to recover damages against CABGOC, Superior

14   Energy would likely be able to proceed to arbitration.  Under California law, "'[a]n

15   assignment for collection vests legal title in the assignee which is sufficient to enable him to

16   maintain an action in his own name, but the assignor retains the equitable interest in the

17   thing assigned.'"  *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.*, 203 Cal.

18   App. 4th 1328, 1335 (2012) (quoting *Harrison v. Adams*, 20 Cal.2d 646, 650 (1942)).  The

19   written settlement documents are consistent with an assignment but do not sufficiently

20   show an intent to assign Operatec's right of recovery to Superior Energy, and Superior

21   Energy has not even offered declarations to show that either Superior Energy or Operatec

22   intended such an assignment when it entered the Settlement Agreement with Superior

23   Energy.

24          **c.**     **Non-Assignment Provision Does Not Necessarily Prohibit**

25                  **Assignment of Claim for Money Due**

26   CABGOC argues that even if Operatec had assigned its rights under the Main

27   Contract to Superior Energy, such an assignment without CABGOC's prior consent is

28   prohibited by the Main Contract.  Superior Energy does not appear to dispute this point, but

14

United States District Court

For the Northern District of California

1    rather argues that Operatec expressly assigned its right to recover against CABGOC.  *See*

2    Reply at 2 ("The claims belong to Superior Energy because Operatec expressly assigned

3    its ***causes of action*** against CABGOC (***not its contract rights*** under the Main Contract)

4    to Superior Energy.").

5         CABGOC does not dispute that under California law, a contractual provision that

6    restricts assignment of the contract does not generally prohibit "an assignment of claims."

7    Opp. at 15.  *See Henkel Corp. v. Hartford Accident & Indemnity Co.*, 29 Cal. 4th 934, 945

8    (2003) (a non-assignment clause does not preclude assignment "(1) when at the time of

9    the assignment the benefit has been reduced to a claim for money due or to become due,

10   or (2) when at the time of the assignment the insurer has breached a duty to the insured,

11   and the assignment is of a cause of action to recover damages for that breach"); *Benton v.*

12   *Hofmann Plastering Co.*, 207 Cal. App. 2d 61, 67 (Cal. Ct. App. 1962) ("There is a

13   distinction between an assignment of a contract and an assignment of the proceeds of the

14   contract.") (citation omitted).  CABGOC argues, however, that even if Operatec had

15   assigned its claims to Superior Energy, such assignment would not give Superior Energy

16   the right to arbitrate that assigned claim.  Because the settlement documents cited by

17   Superior Energy do not manifest a "clear and positive" intent by Operatec to assign its right

18   to claim money due or recover damages against CABGOC, it is not necessary to reach the

19   question whether assignment of a claim for money due would be grounds to compel

20   arbitration of that claim.

21        Because Superior Energy has failed to show that Operatec assigned its rights under

22   the Main Contract, Superior Energy does not have standing to compel arbitration.  The

23   petition for an order compelling arbitration is therefore DENIED.  Superior Energy's request,

24   in the alternative, for leave to file an amended petition is denied as futile on the ground that

25   Superior Energy lacks standing to bring a claim under the arbitration agreement.  To the

26   extent that Superior Energy asks for leave to keep the case open to file a complaint, the

27   request is DENIED on the ground that this case is fully adjudicated and judgment will be

28   entered.  If Superior Energy chooses to file a complaint, any complaint based on the

1    parties' rights under the Main Contract will likely raise similar standing concerns as the

2    issues raised in this petition to compel arbitration.  The court has no opinion, however, as to

3    whether Superior Energy may bring a complaint on some other basis.

4    **C.     Third Party Beneficiary**

5          Superior Energy contends that it may compel arbitration as a non-signatory because

6    it is a third-party beneficiary of the Main Contract, which contemplates that Operatec would

7    hire a subcontractor to complete the work.  Superior Energy did not raise this point during

8    oral argument, but its briefs rely on authorities finding third party beneficiary status under

9    contracts outside the context of a construction project.  CABGOC, by contrast, cites

10   contrary authority governing third party beneficiary status under construction agreements,

11   which is more directly applicable to this dispute.

12         **1.     Legal Standard**

13         California Civil Code section 1559 provides, "A contract, made expressly for the

14   benefit of a third person, may be enforced by him at any time before the parties thereto

15   rescind it."  The promise in such a situation is treated as having been made directly to the

16   third party.  *Outdoor Services, Inc. v. Pabagold, Inc.*, 185 Cal. App. 3d 676, 681 (1986)

17   (citing *Shell v. Schmidt*, 126 Cal. App. 2d 279, 290 (1954)).  It is not necessary that an

18   express beneficiary be specifically identified in the contract; he or she may enforce it if he

19   or she is a member of a class for whose benefit the contract was created.  *Id*.

20         Under California law, a purported third-party beneficiary must show that the contract

21   was "made expressly for the benefit of a third person."  Cal. Civ. Code § 1559; *Trustees of

22   Screen Actors Guild-Producers Pension and Health Plans v. NYCA, Inc.*, 572 F.3d 771,

23   779 (2009).  California courts interpret the word "expressly" as the negative of "incidentally."

24   *Spinks v. Equity Residential Briarwood Apts.*, 171 Cal. App. 4th 1004 (2009).  Thus, "it is

25   not enough that the third party would incidentally have benefited from performance. . . . The

26   contracting parties must have intended to confer a benefit on the third party."  *Spinks*, 171

27   Cal. App. 4th at 1004 (citation and internal quotation marks omitted).

28

United States District Court

For the Northern District of California

1

### 2.    Analysis

Superior Energy relies primarily on the holding of *Outdoor Services* to assert that it is an intended third party beneficiary of the Main Contract and therefore has standing to enforce the arbitration agreement.  However, the reasoning of *Outdoor Services* has not been applied to the construction context.  Under *Southern Cal. Acoustics Co. v. C.V. Holder, Inc.*, 71 Cal. 2d 719 (1969), California law requires a stronger showing of intent to benefit a subcontractor in the construction context to grant third party beneficiary status under a construction agreement.

### a.    *Outdoor Services*

In *Outdoor Services*, the court of appeal recognized that a non-party to a contract may enforce an arbitration agreement as a third party, creditor beneficiary if "the promisor's performance of the contract will discharge some form of legal duty owed to the beneficiary by the promisee."  185 Cal. App. 3d at 682.  The contract at issue there was a manufacturer's contract with an advertising agency for an advertising campaign, whereby the agency would make contracts with advertising media and others to effectuate the manufacturer's ad campaign, and the manufacturer agreed to pay the advertising agency for its services.  *Outdoor Servs.*, 185 Cal. App. 3d at 682.  There, the court held that a non-party owner of advertising space who had contracted with the advertising agency to provide outdoor advertising space was a third party beneficiary of the manufacturer's promise to pay for services under the advertising contract.  The court determined that the manufacturer knew that the advertising agency would contract with third parties to effectuate the advertising campaign.  The court found that the manufacturer, as the promisor, realized that it was assuming the advertising agency's duty to pay for the fees for goods and services that would be incurred to effectuate the advertising campaign.  *Id.* at 683.  Therefore, the third party owner of the outdoor advertising space was a third-party beneficiary of the manufacturer's promise to pay.  *Id.  See also Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 837 (2013) (applying *Outdoor Services* to find third party

17

United States District Court
For the Northern District of California

1    beneficiary standing to enforce an arbitration clause of an agreement between brokerage

2    firm and a customer to open an investment account).

3        Superior Energy argues that the Main Contract expressly contemplated the use and

4    payment of subcontractors to complete the work required under the Main Contract, and that

5    Superior Energy is an intended third party beneficiary under the reasoning of *Outdoor*

6    *Services*.  Reply at 9.  Superior Energy does not, however, cite authority applying the

7    holding of *Outdoor Services* to the construction or general contractor context to find that a

8    subcontractor is a third party beneficiary under a construction contract merely because the

9    contract contemplates that a subcontractor would be paid for work specified in the general

10   contract.  In the construction context, as discussed below, California law requires a

11   showing of specific intent to benefit a subcontractor in order to find third party beneficiary

12   standing.

13                    **b.    California Law Governing Construction Contracts**

14       In opposition, CABGOC cites *Southern Cal. Acoustics Co. v. C.V. Holder, Inc.,* 71

15   Cal. 2d 719 (1969), in which the California Supreme Court held that a subcontractor cannot

16   recover directly from the public entity that owns a construction project as a third-party

17   beneficiary unless it was specifically intended to benefit from the issuance of the general

18   contract.  There, the court found that the subcontractor was named in the general contract

19   for a school construction project because the listing of subcontractors was required by

20   statute, but not "because the contracting parties' purpose was expressly to benefit it."  *Id.* at

21   727-28.  The court held that the subcontractor "was at most an incidental beneficiary and

22   therefore cannot recover as a third-party beneficiary of the contract between [the general

23   contractor] and the school district."  *Id.* at 728.

24       The parties do not address the apparent inconsistency in the authorities that they

25   cite in the construction context and outside the construction context on the question of third

26   party beneficiary status.  Because this dispute involves contracts to provide services for an

27   oil exploration project that is similar to projects in the construction industry, this case is

28   governed by the state supreme court's holding in *Southern Cal. Acoustics* rather than

                                                    18

United States District Court
For the Northern District of California

1   *Outdoor Services*, which was issued by a lower appellate court and does not apply to the

2   specific context of a construction agreement.  If the reasoning of *Outdoor Services* were

3   applied to construction contracts, third party beneficiary status would be conferred on every

4   subcontractor that performed work governed by the general contract because a

5   construction contract typically contemplates that a subcontractor would be hired and paid to

6   do some or all of the work required under the general contract.  In *Southern Cal. Acoustics*,

7   by contrast, the court required evidence that the general contractor and the public entity

8   intended to benefit the subcontractor, and held that the subcontractor was an incidental

9   beneficiary, even though the subcontractor was named in the contract by legal mandate.

10  Applying *Southern Cal. Acoustics* here, Superior Energy would have to show more than the

11  contemplation of hiring and paying a subcontractor as evidence of the parties' intent to

12  benefit the subcontractor in the Main Contract.

13       Superior Energy fails to demonstrate that the parties to the Main Contract intended

14  to benefit the subcontractors who performed work on the project.  Under *Southern Cal.*

15  *Acoustics*, Superior Energy is "at most an incidental beneficiary," and cannot enforce the

16  arbitration agreement between Operatec and CABGOC.

17  **D.    Equitable Estoppel**

18       Superior Energy contends that it may compel arbitration as a nonsignatory to the

19  arbitration agreement under the doctrine of equitable estoppel.

20       **1.    Legal Standard**

21       "Equitable estoppel precludes a party from claiming the benefits of a contract while

22  simultaneously attempting to avoid the burdens that contract imposes."  *Comer v. Micor,*

23  *Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citation omitted).  The Ninth Circuit has

24  recognized that in the arbitration context, the equitable estoppel doctrine has generated two

25  lines of cases.  "Under the first of these lines, nonsignatories have been held to arbitration

26  clauses where the nonsignatory 'knowingly exploits the agreement containing the

27  arbitration clause despite having never signed the agreement.'"  *Id.* (quoting *E.I. DuPont de*

28  *Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir.

2001)).  "Under the second line of cases, signatories have been required to arbitrate claims

brought by nonsignatories 'at the nonsignatory's insistence because of the close

relationship between the entities involved.'"  *Id.* (quoting *DuPont*, 269 F.3d at 199).

> **2.      The Doctrine of Equitable Estoppel Does Not Confer Standing to**
> **Compel Arbitration on a Nonsignatory Who Brings Claims Against a**
> **Signatory to an Arbitration Agreement**

Superior Energy, as a nonsignatory, seeks enforcement of the arbitration agreement

under the line of cases recognizing a nonsignatory's right to compel arbitration.  Superior

Energy relies on authority recognizing that where a signatory to an arbitration agreement

brings claims against a nonsignatory, the signatory is estopped from refusing to arbitrate its

claims against the defendant nonsignatory where "the issues the [nonsignatory] is seeking

to resolve in arbitration are intertwined with the agreement that the estopped party has

signed."  Mot. at 13-14 (citing *In re Apple & AT&T Mobility Antitrust Litig.*, 826 F. Supp. 2d

1168, 1176 (N.D. Cal. 2011) (granting defendants' motions to compel arbitration) (citing

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (internal quotation

marks omitted), petition for permission to appeal denied *sub nom. Holman v. Apple, Inc.*,

No. 12-80012 (9th Cir. Apr. 27, 2012)).  *In re Apple* presented a situation where a

nonsignatory defendant sought arbitration of the claims against it brought by a signatory to

an arbitration agreement.  In that situation, the Ninth Circuit has recognized that a

nonsignatory may compel a signatory to arbitrate the signatory's claims based on estoppel

if two requirements are met:  (1) "the subject matter of the dispute was intertwined with the

contract providing for arbitration," and (2) there exists "a relationship among the parties of a

nature that justifies a conclusion that the party which agreed to arbitrate with another entity

should be estopped from denying an obligation to arbitrate a similar dispute with the

adversary which is not a party to the arbitration agreement."  *Mundi v. Union Sec. Life Ins.*

*Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (affirming denial of motion to compel arbitration)

(citing *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359, 361 (2d Cir. 2008)).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Unlike *In re Apple* and *Mundi*, where the nonsignatory sought to compel arbitration

2   of a signatory's claims against it, Superior Energy, a nonsignatory, seeks arbitration of its

3   own claims against a signatory.  The principles of equitable estoppel that preclude a

4   signatory from avoiding arbitration of the **signatory's claims against a nonsignatory** do

5   not work to the advantage of a nonsignatory that lacks standing to compel arbitration of the

6   **nonsignatory's claims against a signatory**.  In *DuPont*, the Second Circuit recognized

7   that where a nonsignatory parent company seeks to compel arbitration of its claims against

8   a signatory pursuant to an arbitration agreement signed by a subsidiary of the nonsignatory

9   parent company, the signatory would be bound to arbitration because "[i]n essence, [the]

10  nonsignatory voluntarily pierces its own veil to arbitrate claims against a signatory that are

11  derivative of its corporate subsidiary's claims against the same signatory."  *DuPont*, 269

12  F.3d at 201 (citations omitted]).  Under this reasoning, a parent corporation may pierce its

13  own corporate veil to arbitrate its claims under an arbitration agreement entered by a

14  subsidiary, but Superior Energy cannot assert this basis for equitable estoppel because it

15  does not have a parent-subsidiary relationship with any signatory to the Main Contract.

16    Superior Energy cites no authority recognizing a nonsignatory's right to compel

17  arbitration of its own claims against a signatory to an arbitration agreement under an

18  equitable estoppel theory.  Notwithstanding Superior Energy's compelling argument that

19  CABGOC should not be permitted to rely on artfully drafted contracts in a "gotcha" scheme

20  to avoid liability for services rendered, if the equitable estoppel exception to the standing

21  requirement were applied as Superior Energy proposes, the exception would swallow the

22  rule.  Superior Energy lacks any equitable estoppel ground to compel arbitration.

23  **E.    Incorporation by Reference**

24    Superior Energy contends that it is entitled to compel arbitration against CABGOC

25  because the Subcontract expressly incorporates all the terms and conditions of the Main

26  Contract.  Mot. at 16.  Superior Energy fails to demonstrate, however, that it has a

27  contractual relationship with CABGOC that would entitle it to arbitrate with CABGOC.

28

21

1    Superior Energy cites *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773,

2  776 (2d Cir. 1995), in support of its argument that CABGOC should be compelled to

3  arbitrate Superior Energy's claims.  In *Thomson*, the Second Circuit recognized

4  incorporation by reference as grounds for binding nonsignatories to arbitration agreements

5  where the nonsignatory has a separate contractual agreement that incorporates the

6  arbitration clause.  *See also Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)

7  (recognizing that a nonsignatory may be bound by an agreement to arbitrate under ordinary

8  contract and agency principles, including incorporation by reference).  In *Thomson*, a

9  signatory to an arbitration agreement moved to compel arbitration against a nonsignatory

10  parent corporation, Thomson.  The court of appeals held that the party seeking arbitration

11  did not show that the arbitration agreement was incorporated into any document which the

12  nonsignatory adopted.  Thus, the court of appeals held that the nonsignatory could not be

13  bound under an incorporation theory.  *Thomson*, 64 F.3d at 777.

14    *Thomson* held that an arbitration agreement could not be enforced **against** a

15  nonsignatory, and is not directly applicable here, where Superior Energy, as a

16  nonsignatory, seeks to enforce an arbitration agreement against a signatory.  *See CD*

17  *Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005) ("The test for determining

18  whether a nonsignatory can force a signatory into arbitration is different from the test for

19  determining whether a signatory can force a nonsignatory into arbitration.").  Where a

20  nonsignatory attempts to enforce an arbitration agreement, the court of appeals in

21  *Thomson* recognized that "a nonsignatory may compel arbitration against a party to an

22  arbitration agreement **when that party has entered into a separate contractual**

23  **relationship with the nonsignatory incorporating the existing arbitration clause**."

24  *Thomson*, 64 F.3d at 777 (emphasis added).

25    Here, Superior Energy has not demonstrated that it entered a separate agreement

26  with CABGOC incorporating the arbitration provision of the Main Contract.  In reply,

27  Superior Energy fails to address CABGOC's argument that *Thomson* requires that the

28  nonsignatory may compel arbitration against a party to an arbitration agreement if they

22

**United States District Court**
For the Northern District of California

1    have entered a separate contract that incorporates the arbitration provision.  The petition to

2    compel arbitration under an incorporation by reference theory therefore lacks merit.

3                                              **CONCLUSION**

4         In accordance with the foregoing, Superior Energy's first amended petition to compel

5    arbitration is DENIED.  This order terminates the case and all pending motions.  The clerk

6    shall close the file.

7         **IT IS SO ORDERED.**

8

9    Dated: December 6, 2013

10                                                    _____
                                                       PHYLLIS J. HAMILTON
11                                                     United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28